## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 44913

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Unpublished Opinion No. 655 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 30, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| CODY D. HERRERA, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

HUSKEY, Judge

Cody D. Herrera appeals from the district court's judgment of conviction. Herrera argues the district court abused its discretion by imposing an excessive sentence. The district court's judgment of conviction is affirmed.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Herrera pleaded guilty to statutory rape, Idaho Code § 18-6101, based on his sexual contact with a fourteen-year-old. The victim's mother testified at sentencing, stating that she believed Herrera was "a predator looking for young girls to take advantage of and manipulate." The psychosexual evaluation (PSE) recommended the district court take "into account how opportunistic or predatory the examinee[']s past sexual history and instant offense was" and noted that Herrera previously had thirty-four different sexual relationships. The district court stated it had "never, never seen that level of sexual activity between a 19-year-old." The State

1

recommended a unified sentence of five years, with three years indeterminate. Herrera requested no specific underlying sentence but asked that he be placed on probation. In imposing sentence, the court considered the factors of I.C. § 19-2521; the policy factors of retribution, rehabilitation, deterrence, and the protection of society; Herrera's presentence investigation report (PSI); Herrera's PSE; the statement from the victim's mother; the arguments of the parties; and the district court's experience with similar cases. Thereafter, the district court imposed a unified sentence of fifteen years, with five years determinate, but retained jurisdiction. Herrera timely appeals.

## II.

## STANDARD OF REVIEW

Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## III.

## ANALYSIS

Herrera claims the district court abused its discretion by failing to sentence him according to an exercise of reason. First, Herrera argues the district court improperly discounted expert findings in the PSE which stated Herrera was an opportunistic offender, accepting instead the statement of the victim's mother that Herrera was a predator. Second, Herrera argues the district court improperly used the fact that Herrera had a large number of sexual partners to conclude that Herrera used young children for sexual gratification. Third, Herrera contends the district court failed to consider various mitigating factors, namely his immaturity, age, lack of any

2

previous felonies, family and friend support, remorse he expressed at the sentencing hearing, how he took responsibility for his actions, and how he completed a treatment program prior to sentencing.

**A.    The District Court Did Not Abuse Its Discretion by Considering the PSE's Inconsistency With the Rest of the Evidence Before It**

During the sentencing hearing, the district court considered various sources of information, including the PSI, the PSE, the statement of the victim's mother, Herrera's sexual history, and the facts of this case. In some instances, these sources of information conflicted with each other, even internally. In the PSI, for instance, Herrera stated he was seventeen years old when he had sex with the victim in this case, but admitted elsewhere that he was eighteen at the time. Also within the PSI, Herrera stated he had not used drugs for over a year, but admitted elsewhere he used marijuana and cocaine during that same period. Herrera was also inconsistent about suicidal thoughts (claiming he had never had any, but then disclosed an admission to a hospital for suicidal ideation), ADHD, insomnia, and the number of his past sexual partners (either thirty-four or thirty-six).

Herrera argues the district court improperly resolved one particular contradiction against Herrera by discounting the examiner's findings in the PSE which characterized Herrera as opportunistic, accepting instead the statement of the victim's mother calling Herrera a predator.

In the mother's statement, she wrote that Herrera:

> harassed, manipulated, and even threatened to kill [victim], several members of my family, and numerous friends of our family. [Herrera] is a predator looking for young girls to take advantage of and manipulate. This is not the first time [Herrera] has done this. [Herrera] preys on young vulnerable girls, and even protection orders don't help keep him away. [Herrera] proved that with his 17-year-old girlfriend, who also has filed a protection order against him.

In the PSE, however, an examiner stated Herrera's "offending behaviors were perceived to be opportunistic, involved mild grooming and coercion to gain sexual advantage." While making a recommendation regarding supervision, the examiner advised, "It should be taken into account how opportunistic or predatory the examinee[']s past sexual history and instant offense was."

The district court, attempting to synthesize the various sources of information, stated that all the information before it:

> tells me what [the victim's mother] is trying to tell me is that there is a level that this--an attitude that this defendant has that, well, I'm going to use young children

3

for sexual gratification. That does not seem to be consistent with what the psychosexual report says because I don't think they didn't--as I read it, [the examiner] did not designate Mr. Herrera as a, quote, sexual predator, even though there is certainly an argument that can be made for that. So I'm having a little trouble understanding why this evaluation came out the way it came out.

The district court also observed "[t]hough there certainly can be some quibbling over the ultimate evaluation of [the examiner] in this case, I read this report as saying that this defendant is a moderate risk of reoffense."

Although Herrera claims "the district court concluded that the psychosexual evaluation was mistaken in not designating Mr. Herrera as a 'sexual predator,'" the district court made no such designation. The district court noted that *the examiner* had not designated Herrera a sexual predator. At no point did *the district court* designate Herrera a sexual predator. Additionally, the district court never rejected the conclusions of the PSE and or adopted the opinion of the victim's mother. Instead, the district court queried whether the PSE correctly classified Herrera based on the conflicting information before the district court.

To the extent that the PSE's conclusion about Herrera's method of offense (opportunistic or predatory) created an inconsistency with the other information before the district court, it was reasonable for the district court to compare the various sources of information and reach a conclusion about which source to rely on. Such is the district court's prerogative in sentencing, taking all available information under consideration and then, pursuant to its discretion, imposing a sentence that best meets the sentencing goals and complies with the statutory parameters. Doing so does not evidence a lack of reason.

**B.** **The District Court Did Not Abuse Its Discretion by Considering the Number of Herrera's Sexual Partners**

Herrera claims the number of his sexual partners (either thirty-four or thirty-six) should be irrelevant to the district court's sentencing decision, that the record is "devoid of any facts" that these partners were young children, and that the district court's related discussion of morality was inappropriate.

During the sentencing hearing, the district court stated:

I have seen dozens, if not hundreds, of sex cases since I've been on this bench. Our society has come to a point of, I don't even know how to explain it, you know? I am 66 years of age. When I was 19 years of age, the sexual proclivities of young people wasn't anything, anything like I see today. I think it is a direct consequence of the social media system that we have in this country, which I can't tell you how many times I have seen these cases, "How did this happen?"

4

"Well, I met somebody on social media." While that may not be the reasons why sex offenses occur, I can tell you that the vast majority of the cases that come before the Court have their origination from that. I can't change that. If I had my way, I would eliminate the internet, and we'd all have better lives, but I can't do that either.

It also says something about, I guess, the level of morality in this country. I can't change morality. People are going to do what they're going to do.

The district court later continued, stating that Herrera, "by his own admission, has had 34, count them, 34 sexual encounters with separate individuals. I have never, never seen that level of sexual activity between a 19-year-old, in this court system, and I've been doing this for 15, 16 years now." The district court touched again on the topic, stating, "I understand, again, that in today's society and with the hormones that rage between young people, that sexual encounters can happen, but this defendant's level of activity is way beyond that, as far as I'm concerned. And that concerns me."

The district court's discussion about Herrera's sexual partners and the state of society's morality does not indicate the district court failed to reach its decision by an exercise of reason. Rather, it indicates the district court found Herrera's sexual history to be particularly worrisome. Indeed, the district court commented that its "view of life is that what you do in the past is a good indication of what you're going to do in the future" and that "the level of partners, I'm going to call it, for lack of a better way to put it, that [Herrera] had is simply significant, and frankly, it scares me because [Herrera] say[s] it's not going to happen anymore. Well, that's not what history shows. It's not what history shows."

The record reveals that the district court's concerns were legitimate. The PSE states that Herrera had dozens of sexual encounters with individuals aged sixteen, seventeen, and older with some sexual contact occurring with individuals as young as fourteen. Additionally, the PSI contains evidence that while this case was pending sentencing, a different victim, who was seventeen years old, filed a protection order against Herrera.

While some may not view a sixteen or seventeen-year-old as a young child, the fact remains that they are children. The PSE's recitation of Herrera's sexual history and the PSI's mention of a different victim's protection order make clear that Herrera has engaged extensively in sexual relationships with minors. While we note that Herrera was likely a minor during many of these encounters, it does not change the fact that the victims were minors. This fact, along

5

with the multiple other sources of information the district court considered, contributed to the sentence the district court imposed, which was reached by an exercise of reason.

**C.    The District Court Properly Considered All Mitigating Factors**

During the sentencing hearing, the district court heard argument from Herrera's counsel about Herrera's age, lack of maturity, criminal history, family support, and treatment Herrera completed. The district court then heard from Herrera who expressed remorse and accepted responsibility for his actions. The district court also considered the mitigating evidence offered in the PSI, PSE, and other evidence presented at the sentencing hearing. Thus, the district court considered all the mitigating factors Herrera claims it overlooked.

Because the district court conducted a comprehensive review and consideration of the information before it, the district court exercised reason in imposing Herrera's sentence, and consequently, did not abuse its discretion.

## IV.

## CONCLUSION

The district court did not abuse its discretion in considering the PSE's inconsistency with the rest of the evidence before it or the number of Herrera's sexual partners; they were part of a larger consideration made under the district court's exercise of reason. Additionally, the district court properly considered all relevant mitigating factors. The district court's judgment of conviction and sentence are affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.

6